**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| WILMINGTON TRUST, NATIONAL ASSOCIATION, AS TRUSTEE FOR THE REGISTERED HOLDERS OF CREDIT SUISSE FIRST BOSTON MORTGAGE SECURITIES CORP., MULTIFAMILY MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2019-SB61, <br><br> Plaintiff, <br><br> v. <br><br> 1215 BROOK LLC; MOSHE STEIN; ELIYAHOU FISHER; MEYER KAUFMAN; COUNTY OIL COMPANY INC.; DEPARTMENT OF HOUSING PRESERVATION AND DEVELOPMENT; THE CITY OF NEW YORK ENVIRONMENTAL CONTROL BOARD; JOHN DOE NO. I THROUGH JOHN DOE NO. XXX, inclusive, the last thirty names being fictitious and unknown to Plaintiff, the persons or parties intended being the tenants, occupants, persons, or corporations, if any, having or claiming an interest in or lien upon the premises described in the Complaint, <br><br> Defendants. | Case No. 1:25-cv-08270 |

**COMPLAINT FOR MORTGAGE FORECLOSURE**

Plaintiff Wilmington Trust, National Association, as Trustee for the Registered Holders of Credit Suisse First Boston Mortgage Securities Corp., Multifamily Mortgage Pass-Through Certificates, Series 2019-SB61 ("**Lender**" or "**Plaintiff**"), by and through its attorneys, and for its Complaint against Defendants 1215 Brook LLC, Moshe Stein, Eliyahou Fisher, Meyer Kaufman, County Oil Company Inc., Department of Housing Preservation and Development, the City of New York Environmental Control Board, and John Doe No. 1 through John Doe No. XXX (collectively, the "**Defendants**"), states as follows:

**INTRODUCTION**

1.     This is an action to foreclose a first-priority lien held by Lender on certain commercial real and personal property located at 1215 Brook Avenue, Bronx, NY 10456. The lien secures a commercial mortgage loan made to 1215 Brook LLC ("**Borrower**") in the original principal amount of $1,630,000.00 the ("**Loan**"), which Loan is guaranteed by Moshe Stein, Eliyahou Fisher, Meyer Kaufman (collectively "**Guarantors**").

2.     Borrower has: (i) failed to make monthly payments of principal and interest and other amounts due under the Loan Documents (defined below); and (ii) failed to keep the subject property in good repair and cure certain issues identified in an inspection report of the subject property. As a result, the amounts due and owing under the Loan Documents have been accelerated, and the full amount of the indebtedness is now due and owing. Despite demand, Borrower has failed to pay to Lender the accelerated indebtedness owed under the Loan Documents and is therefore in default. As a result, Lender is entitled to foreclose its security interest in the property securing the Loan.

## THE PARTIES

3.     Wilmington Trust, National Association ("**Wilmington Trust**") is a national banking association organized under federal law with its main office and principal place of business at 1100 North Market Street, Wilmington, Delaware 19890. Wilmington serves as trustee for Lender, which is a trust that has elected to be treated as a real estate mortgage investment conduit ("**REMIC**") under the Internal Revenue Code of 1986 ("**Trust**"). With respect to the loan transaction that is the subject of this action, KeyBank National Association ("**KeyBank**") acts as the Special Servicer and authorized agent for Lender.

4. KeyBank and Lender are parties to that certain Limited Power of Attorney dated as of April 11, 2024 (the "**POA**").  A true and accurate copy of the POA is attached hereto as **Exhibit A**.

5. The POA gives KeyBank the authority to take all actions necessary to, among other things, "recover, collect and receive each and every sum of money, debt, account and interest …belonging or claimed by Trustee" including the amounts due and owing under the Loan Documents (defined below).  *See* POA, at ¶ 1.

6. The POA further extends KeyBank the authority for, through counsel, "foreclosing on the properties under the Security Instruments by judicial or non-judicial foreclosure." *See* POA, at ¶ 1.

7. KeyBank is the appointed Special Servicer for Lender, which gives KeyBank the authority to act on behalf of Lender. However, from time to time, and as needed, formal, limited power of attorneys are executed (such as the one attached as Exhibit A).

8. At all times relevant for this litigation, KeyBank had (and continues to have) the authority to act on behalf of Lender.

9. Borrower is a New York limited liability company, whose address for purposes of notices and legal process is 1274 49th Street, Suite 433, Brooklyn, NY 11219, Attn: Meyer Kaufman.

10. Defendant Moshe Stein ("**Stein**") is an individual and, upon information and belief, a resident of the State of New York, whose address for the purposes of notices and legal process is 1420 57th Street, Brooklyn, NY 11219.

11. Defendant Meyer Kaufman ("**Kaufman**") is an individual and, upon information and belief, a resident of the State of New York, whose address for the purposes of notices and legal process is 1164 51st Street, Brooklyn, NY 11219.

12. Defendant Eliyahou Fisher ("**Fisher**") is an individual and, upon information and belief, a resident of the State of New York, whose address for the purposes of notices and legal process is 1406 55th Street, Brooklyn, New York 11219.

13. County Oil Company Inc. ("**County Oil Co.**"), has an address of 65 South 11th Street, Suite 1E, Brooklyn, NY 11249. County Oil Co. is named a defendant herein based upon the possible existence of a Mechanic's Lien in the amount of $24,639.10, as set forth on **Exhibit B**.

14. Department of Housing Preservation & Development ("**HPD**") has an address for service of process of 100 Gold Street, New York, NY 11201. HPD is named as a defendant herein based upon the possible existence of loans, judgments, encumbrances, lis pendens or other filings against the property that is the subject of this mortgage foreclosure action, as set forth on **Exhibit C**.

15. The City of New York Environmental Control Board (the "**ECB**") has an address of 100 Church Street, New York, New York 10007. ECB is named as a defendant herein based upon the possible existence of loans, judgments, encumbrances, lis pendens or other filings against the property that is the subject of this mortgage foreclosure action, as set forth on **Exhibit D**.

16. Defendants John Does I through XXX are currently unknown to Lender but, upon information and belief, are tenants, occupants, persons, or corporations, if any, having or claiming an interest in or lien upon the premises described in the Complaint.

## JURISDICTION AND VENUE

17. This is a civil action over which this Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)(1).

18. In *Navarro Sav. Ass'n v. Lee*, 446 U.S. 458 (1980) and *Americold Realty Tr. V. Conagra Foods, Inc*., 577 U.S. 378 (2016), the United States Supreme Court confirmed a long-standing rule of jurisprudence than an express, "traditional" trust is not a juridical person—it is a fiduciary relationship—and, therefore, for purposes of diversity jurisdiction, only the citizenship of the trustee is considered. Courts sitting in the Second Circuit have adhered to the principles set forth in Navarro and Americold and held that the citizenship of the trustee of a traditional trust litigating in its own right, controls for the purposes of diversity jurisdiction. *See, e.g., Raymond Loubier Irrevocable Trust v. Loubier*, 858 F.3d 719, 731 (2d Cir. 2017) ("because the party trusts here are not organized according to state law as distinct juridical entities but, rather, are traditional trusts, establishing only fiduciary relationships . . . it is the trustees' citizenship that must determine diversity"); *Wilmington N.A. v. 2150 Joshua's Path, LLC*, No. 13-CV-1598, 2017 WL 4480869, *3 (E.D.N.Y. 2017) (affirming that an express common law trust is deemed to have the citizenship of its trustee); *SPV-LS, LLC v. Bergman*, No. 15 CV 6231, 2019 WL 2257244, *16 (E.D.N.Y. 2019) ("For traditional trusts, it is the citizenship of the trustees holding legal right to sue on behalf of the trusts that is relevant to jurisdiction.")

19. Plaintiff is a traditional trust, and its trustee, Wilmington Trust, is the real party in interest. Plaintiff's trustee, Wilmington Trust, brings this action in its own name and in its capacity as trustee. Wilmington Trust is the owner of a pool of mortgage loans, which includes the loan that is the subject of this lawsuit, and holds these assets in a trust for the benefit of the registered holders of "Credit Suisse First Boston Mortgage Securities Corp Multifamily Mortgage Pass-Through

Certificates, Series 2019-SB61." This trust relationship was organized as a common law trust under the laws of the State of New York and is governed by a

20. Pooling and Service Agreement dated as of April 1, 2019 (the "**PSA**"). The New York Civil Practice Law and Rules provides that a trustee of an express trust may sue in its own name. *See* N.Y. CPLR § 1004. Under the PSA, Wilmington Trust holds trust assets for the exclusive benefit of the certificate holders. It is Wilmington Trust, acting through its loan servicer, KeyBank National Association, who has dominion over the loans and the right and authority to defend lawsuits and file lawsuits with respect to trust assets. The beneficiaries of the trust (i.e., the certificate holders) have no such authority, nor do the beneficiaries of the trust have any ownership interest in the trust's property.

21. For purposes of diversity jurisdiction, Plaintiff has the citizenship of its trustee. Plaintiff's trustee, Wilmington Trust, is a national banking association. As stated in *Wachovia Bank, N.A. v. Schmidt*, 546 U.S. 303 (2006), a national banking association is a citizen of the state where the bank has its main office. U.S. Bank's main office is in Wilmington, Delaware. Accordingly, Plaintiff is a citizen of Delaware for purposes of federal diversity jurisdiction.

22. Stein is an individual and a citizen and resident of the state of New York, therefore Stein's citizenship for federal diversity jurisdiction purposes is New York.

23. Kaufman is an individual and a citizen and resident of the state of New York, therefore, Kaufman's citizenship for federal diversity jurisdictional purposes is New York.

24. Fisher is an individual and a citizen and resident of the state of New York, therefore, Fisher's citizenship for federal diversity jurisdictional purposes is New York.

25. Borrower is a limited liability company which, for diversity jurisdiction purposes, has the citizenship of its members.

26. Borrower consists of three members Stein, Kaufman, Fisher – all of whom are citizens of New York.

27. Therefore, Borrower's citizenship for federal diversity jurisdiction purposes is New York.

28. County Oil is a New York corporation with a principal place of business in New York. County Oil is a citizen and resident of the state of New York.

29. HPD is a New York City agency and a citizen and resident of the state of New York.

30. ECB is a New York City agency and a citizen and resident of the of the state of New York.

31. There exists complete diversity between Lender (Delaware citizenship) and all Defendants (New York citizenship).

32. Borrower is indebted to Lender pursuant to a commercial mortgage loan transaction, as described in more detail below. The outstanding balance on the loan exceeds $75,000.00. Accordingly, the amount in controversy is greater than the $75,000.00 threshold for diversity jurisdiction.

33. The action properly lies in the Southern District of New York as the property which is the subject of this action lies in this judicial district and all or substantially all of the events or omissions giving rise to the claims occurred in this judicial district. 28 U.S.C. § 1391(a)(2). Further, the assignor of Plaintiff, and Borrower, consented to venue in this judicial district pursuant to the operative documents which are the subject of this suit. 28 U.S.C. § 1391(b)(2).

## THE LOAN TRANSACTION

34. Lender is the owner and holder of a $1,630,000.00 loan (the "**Loan**"), which is evidenced by: (i) that certain Loan Agreement – SBL, dated as of December 6, 2018 (the "**Loan Agreement**") executed by Borrower in favor of Basis Multifamily Capital, LLC ("**Original Lender**"); and (ii) that certain New York Consolidated, Amended and Restated Note – SBL, dated as of December 6, 2018 (the "**Note**"), in the original principal amount of $1,630,000.00, executed by Borrower and in favor of Original Lender. A true and correct copy of the Loan Agreement is attached hereto as **Exhibit E**.  A true and correct copy of the Note is attached hereto as **Exhibit F**.

35. The indebtedness owed under the Note is secured by Borrower's non-residential real property, and improvements thereon, with a street address of 1215 Brook Avenue, Bronx, NY 10456, and all of Borrower's personal property, as set forth in the Security Instrument (defined below) (collectively, the "**Property**").

36. The Loan and the Note are secured by, among other things, the Property, as evidenced by:

  (a) that certain Multifamily Mortgage, Assignment of Rents and Security Agreement, dated as of June 27, 2000, executed by Cavan 1215 LLC in favor of Doral Bank, FSB (the "**2000 Mortgage**") and recorded with the NYC Department of Finance Office of the City Register (the "**Register**") on July 7, 2000, as Reel: 1787, Page 1815;

  (b) that certain Mortgage, dated as of September 18, 2003, executed by Cavan 1215 LLC in favor of Independence Community Bank (the "**2003 Mortgage**") and recorded with the Register on November 26, 2003, as CRFN: 2003000475826;

8

106287650

(c) that certain Subordinate Mortgage and Security Agreement dated as of September 14, 2005, executed by Cavan 1215 LLC in favor of Country Bank (the "**2005 Mortgage**") and recorded with the Register on September 14, 2005, as CRFN: 2005000512260;

(d) that certain Gap Mortgage dated as of January 17, 2012, executed by Cavan 1215 LLC in favor of Capital One, National Association (the "**2012 Mortgage**") and recorded with the Register on January 30, 2012, as CRFN: 2012000040531;

(e) that certain Mortgage, Assignment of Leases and Rents, and Security Agreement, dated as of March 2, 2017, executed by Living Emunah LLC in favor of New York Community Bank (the "**2017 Mortgage**") and recorded with the Register on March 16, 2017, as CRFN: 2017000102704;

(f) that certain Multifamily Mortgage, Assignment of Rents and Security Agreement, dated as of December 6, 2018, executed by Borrower in favor of Basis Multifamily Capital, LLC (the "**2018 Mortgage**") and recorded with the Register on December 11, 2018, as CRFN: 2018000407938; and

(g) that certain Consolidation, Extension and Modification Agreement, dated as of December 6, 2018, the grantor under which is Borrower (as amended from time to time, the "**Security Instrument**"), which consolidates the 2000 Mortgage, the 2003 Mortgage, the 2005 Mortgage, the 2012 Mortgage, the 2017 Mortgage, and the 2018

9

Mortgage to form a single lien on the Property. A true and correct copy of the Security Instrument, as recorded, is attached hereto as **Exhibit G**.

37.  The Security Instrument was duly recorded with the Register on December 6, 2018, as CRFN: 2018000407939, and the New York State recording tax was duly paid thereon. (**Ex. G**).

38.  The Security Instrument includes a security agreement creating a security interest in certain property (collectively, the "**Collateral**"), as more particularly described on Exhibit C to the Security Instrument, at page 7.

39.  Lender is also the owner and holder of that certain Guaranty – SBL, dated as of December 6, 2018 (the "**Guaranty**"), under which Guarantors are identified as guarantors for the Note. A true and correct copy of the Guaranty is attached hereto as **Exhibit H**.

40.  Additionally, a UCC financing statement was filed against Borrower and recorded with the Register on December 11, 2018, as CRFN: 2018000407371. The foregoing UCC financing statement, together with all exhibits, continuations, assignments, and amendments thereto and thereof, are collectively referred to herein as the "**Financing Statements**". True and correct copies of the Financing Statements (including the related assignments to Lender) are attached hereto collectively as **Exhibit I**.

41.  The Loan Agreement, Note, Security Instrument, Guaranty, Financing Statements and all other documents further evidencing, securing or executed in connection with the Loan are referred to herein collectively as the "**Loan Documents**."

**Assignment of Loan to Lender**

42.  Basis Multifamily Capital, LLC ("**Original Lender**") assigned all of Original Lender's right, title, and interest in and to the Loan and the Loan Documents to Basis Multifamily Finance I, LLC, as evidenced by (i) the allonge to the Note (attached as Exhibit F (Note) hereto);

10

and (ii) that certain Assignment of Consolidated Security Instruments dated as of December 6, 2018, and recorded with the Register on December 11, 2018 as CRFN: 2018000407940. A true and correct copy of the foregoing assignment to Basis Multifamily Finance I, LLC is attached hereto as **Exhibit J.**

43. Thereafter, on or about December 6, 2018, Basis Multifamily Finance I, LLC assigned all of its right, title, and interest in and to the Loan and the Loan Documents to Federal Home Loan Mortgage Corporation as evidenced by: (i) that certain allonge to the Note (attached to Exhibit F (Note) hereto); and (ii) that certain Assignment of Consolidated Security Instruments dated as of December 6, 2018, and recorded with the Register on December 11, 2018 as CRFN: 018000407941. A true and correct copy of the foregoing assignment to Federal Home Loan Mortgage Corporation is attached hereto as **Exhibit K**.

44. On or about April 10, 2019, Federal Home Loan Mortgage Corporation assigned all of its right, title, and interest in and to the Loan and the Loan Documents to Lender as evidenced by: (i) that certain allonge to the Note (attached to Exhibit F (Note) hereto); and (ii) that certain Assignment of Mortgage dated as of April 10, 2019, and recorded with the Register on April 24, 2019 as CRFN: 2019000130947. A true and correct copy of the foregoing assignment to Lender is attached hereto as **Exhibit L**.

45. Lender is the current owner and holder of the Loan and Loan Documents.

46. Prior to the commencement of this action, Lender has been in exclusive possession of the original Loan Documents, including the Note, and has not transferred the same to any other person or entity.

**DEFAULTS UNDER THE LOAN DOCUMENTS**

47. The Loan Documents provide, among other things:

a. Borrower agreed to make monthly payments of principal, interest, and other amounts, as specified in the Note; failure to do so results in an Event of Default under the Loan Documents (*see* Loan Agreement, at § 8.01(a); Note, at § 1; Exhibit C to the Security Instrument, at § 8);

b. Borrower agreed to promptly restore and repair, in a good and workmanlike condition, any damaged part of the Property, and agreed to not commit waste or permit impairment or deterioration of the Property; any failure in this regard constitutes an Event of Default under the Loan Documents (*see* Loan Agreement, at §§ 6.09, 8.01(t); Note, at § 5(c); Exhibit C to the Security Instrument, at § 8);

c. in the event of a default by Borrower, Lender is entitled to accelerate the amounts due and owing under the Note and other Loan Documents (*see* Loan Agreement, at § 8.03(a); Note, at § 5(e); Security Instrument at Exhibit C, § 9; Guaranty, at § 3(a)(i));

a. in any action to foreclose, Lender shall be entitled to the appointment of a receiver without notice or regard to value (*see* Security Instrument at Exhibit C, § 3(c)(ii));

b. Lender shall be entitled to legal expenses, costs and fees (*see* Loan Agreement, at § 8.03(a); Security Instrument at Exhibit C, § 9; Guaranty, at § 3(a)(iv)); and

c. in the event of a default by the Borrower, interest at the default rate set forth in the Loan Documents shall be owed by the Borrower (*see* Note, at § 5(b)).

48. Borrower defaulted under the Loan Documents by (i) failing to make monthly payments of principal and interest and other amounts due under the Loan Documents for the months of February 2025 and thereafter (the "**Payment Defaults**"); and (ii) failing to keep the Property in good repair and cure certain issues (the "**Repair Defaults**") identified in an inspection report of the Property, dated November 25, 2024 (the "**November 2024 Inspection Report**").

49. By letter dated August 22, 2025 (the "**Notice of Default**"), Lender notified Borrower and Guarantors of the Payment Defaults and Repair Defaults (collectively, the "**Defaults**"). Further, in the Notice of Default, Lender demanded that Borrower cure the Defaults on or before September 5, 2025. A true and correct copy of the Notice of Default is attached hereto as **Exhibit M**.

50. Borrower failed to cure its default on or before September 5, 2025, as demanded by Lender in the Notice of Default. Consequently, Lender sent a second letter to Borrower and Guarantors dated September 9, 2025 (the "**Acceleration Letter**") providing formal notice that Borrower remained in default under the terms of the Loan Documents, accelerating the indebtedness owed under the Note, and revoking Borrower's license under the Loan Documents to receive, collect, and make use of rents, profits, and income of any other type derived from the Property (the "**Rents**"). A true and correct copy of the Acceleration Letter is attached hereto as **Exhibit N**.

51. Borrower has failed to pay the accelerated indebtedness owed under the Note and Loan Documents, and, as a result, remains in default thereunder.

## AMOUNTS DUE UNDER THE LOAN DOCUMENTS

52. As of October 1, 2025, the unpaid amounts due and owing under the Note include the principal balance of $5,861,536.14, together with interest, default interest at the Default Annual

Interest Rate (as defined in the Note), and any and all fees and costs incurred by Lender, both to date and hereafter, in connection with the collection of the amounts due and owing under the Loan Documents for the protection, preservation, and realization of the Property, including processing fees, late charges, inspection fees, environmental fees, appraisal fees, expenses, administrative fees, attorneys' fees, and costs incurred in connection with the issuance of third-party reports in connection with the Property, less any funds paid by Borrower but not yet applied to the debt by Lender, and any other amounts due and owing under the Loan Documents.

## RIGHT TO POSSESSION AND RENTS

53. Pursuant to the Security Instrument, upon a default under the Security Instrument, Lender is entitled to collect and receive the rents and the value of the use and occupation of the Property. *See* Security Instrument, at Exhibit C, § 3(b)(iii).

54. Lender is entitled to an order directing all rents, issues and profits from the Property be remitted to Lender in accordance with the terms of the Security Instrument and other Loan Documents and directing that any such amounts be used to reduce the indebtedness described above.

## RIGHT TO RECEIVER

55. Under the terms of the Loan Documents, upon an Event of Default under the Loan Documents, Lender is immediately entitled to the appointment of a receiver for the Property without notice to Borrower. Specifically, the Security Instrument states:

> if an Event of Default has occurred and is continuing, regardless of the adequacy of Lender's security, without regard to Borrower's solvency and without the necessity of giving prior notice (oral or written) to Borrower, Lender may apply to any court having jurisdiction for the appointment of a receiver for the Mortgaged Property to take any or all of the actions set forth in the preceding sentence. If Lender elects to seek the appointment of a receiver for the Mortgaged Property at any time after an Event of Default has occurred and is continuing, Borrower, by its execution of this Instrument, expressly consents to the appointment of such

receiver, including the appointment of a receiver *ex parte* if permitted by applicable law.

*See* Security Instrument, at Exhibit C, § 3(c)(ii).

56. Given the occurrence and continuance of Borrower's default under the Loan Documents and considering Borrower expressly consented to the appointment of a receiver upon the occurrence of an Event of Default, Lender is entitled to the immediate appointment of a receiver for the Property on an *ex parte* basis.

## **RIGHT TO FORECLOSE**

57. Under the terms of the Loan Documents, including the Security Instrument, upon Borrower's default, Lender has the right to institute a proceeding for foreclosure and thus is entitled to an order of the Court that the Security Instrument be foreclosed, that the lien provided therein be declared as a first and prior lien on the Property, and that Lender be granted the right of immediate possession of the Property.

58. No other action has been brought to recover any part of the debt owed under the Loan Documents.

59. The Defendants herein have or claim to have some interest in, or lien upon, the Property or some part thereof, which interest or lien, if any, has accrued subsequent to the lien of the Security Instrument and is subject and subordinate thereto. As such, Defendants should assert whatever interest they have or may claim to have in the Property.

60. Lender may not be deemed to have waived, altered, released, or changed its election to foreclose by reason of any payment made after the date of commencement of this action of any and all of the defaults identified herein.

61. Lender specifically reserves the right to pursue a temporary injunction, to seek appointment of a receiver, or to seek other relief with respect to its rights under the Loan

Documents. Pursuant to N.Y. Real Prop. Acts. Law §1371, Lender reserves the right to move the Court to enter final judgment against Borrower or any other liable party, including Guarantors, for any residue of the debt under the Note remaining unsatisfied after the foreclosure sale of the Property is completed.

**WHEREFORE**, Lender respectfully requests that the Court enter judgment in favor of Lender for foreclosure of the Property as follows:

A. Finding that Lender has a first and best lien on the Property;

B. Finding that Borrower has defaulted upon the terms and conditions of the Loan Documents;

C. Ordering that a receiver be appointed for the Property;

D. Ordering that Lender has the legal right and is authorized to foreclose on the Property:

   (i) In one or more parcels according to law together with the fixtures and articles of personalty upon the Property;

   (ii) Subject to zoning restrictions and ordinances adopted by any municipality or other governmental authority, and violations thereof;

   (iii) Subject to any state of facts that an accurate survey would show;

   (iv) Subject to covenants and restrictions of record, if any;

   (v) Subject to violations, if any, noted by any federal, state, city, town or village agency having authority over the Property;

E. Finding that such foreclosure will vest in the purchaser thereat free and clear title to the Property, free of any and all interests that are or might be asserted by the Defendants to this Complaint;

F. Ordering that Lender has the right to credit bid at such foreclosure sale any and all amounts due to Lender under the Note and other Loan Documents;

G. Ordering and directing that the Sheriff of Bronx County, or any referee appointed in this action, foreclose the Property and deliver title via a Sheriff's Deed or Referee's Deed, and bill of sale, as appropriate, to the successful bidder at such foreclosure;

H. Ordering and directing that the proceeds of the sale be applied as follows:

   (i) to payment of the expenses of the sale;

   (ii) to the payment of the debt owed to Lender under the Note and other Loan Documents;

   (iii) to the payment of foreclosure costs and other accrued costs in connection with the foreclosure, including attorney's fees;

   (iv) to the payment, at Lender's option, of any real property taxes that may be due and unpaid in connection with the Property;

   (v) to the payment, at Lender's option, of all other assessments against or attributable to the Property;

   (vi) the surplus, if any, to the payment of the debts secured by junior liens on the Property and then, to Borrower, in accordance with further order of the Court;

I. Ordering that Borrower has no right of redemption or reinstatement with respect to the Property;

J. Finding that Lender has preserved its rights to pursue any deficiency that may exist under the Note and other Loan Documents after application of the proceeds of the

17

foreclosure sale pursuant to N.Y. Real Prop. Acts Law §1371 and may move the Court to enter final judgment against Borrower and Guarantors fur such deficiency; and

K. Ordering all further relief the Court deems just, proper and equitable.

Dated:  New York, New York
        October 6, 2025

                                      POLSINELLI PC

                                      By:  */s/ Aaron P. Davis*
                                            AARON P. DAVIS
                                            600 Third Avenue, 42nd Floor
                                            New York, New York 10016
                                            (212) 803-9918
                                            ADavis@polsinelli.com

                                      ATTORNEYS FOR PLAINTIFF