UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

WILMINGTON TRUST, NATIONAL
ASSOCIATION, AS TRUSTEE FOR THE
REGISTERED HOLDERS OF CREDIT
SUISSE FIRST BOSTON MORTGAGE
SECURITIES CORP., MULTIFMAILY
MORTGAGE PASS-THROUGH
CERTIFICATES, SERIES 2019-SB61,

                        Plaintiff,

             -against-

1215 BROOK LLC, et al.,

                    Defendants.

-------------------------------------------------------------------X

**25-CV-8270 (VM) (KHP)**

**OPINION & ORDER ON MOTION
FOR RECEIVER**

**KATHARINE H. PARKER, United States Magistrate Judge:**

In this action, Plaintiff Wilmington Trust, National Association ("Wilmington") seeks to foreclose on real property at 1215 Brook Avenue, Bronx, NY (the "Property"), pursuant to a mortgage executed by Defendant 1215 Brook LLC ("Borrower"). (*See* ECF No. 6-7.)  Before the Court is a motion for receiver filed by Plaintiff Wilmington Trust ("Wilmington").  For the reasons that follow, the motion is **granted**.[1]

---

[1] Some courts in this district have treated motions to appoint a receiver as non-dispositive and capable of resolution by a magistrate judge on a referral basis. *See, e.g.*, *Sanchez v. El Barrio's Car Serv., Inc.*, 347 F.R.D. 439, 439 n.1 (S.D.N.Y. 2024).  However, other courts have treated motions to appoint a receiver as requiring a magistrate judge to prepare a Report and Recommendation pursuant to Federal Rule of Civil Procedure 72(b). *See, e.g.*, *College Diamond Fund Inc. v. Davis*, 24-cv-4800 (AT) (RFT), 2025 WL 1626442, at *1 n.2 (S.D.N.Y. Jan. 30, 2025); *see also ML-CFC 2007-6 Puerto Rico Props, LLC v. BPP Retail Props., LLC*, 951 F.3d 41, 48-49 (1st Cir. 2020) (holding a motion for receiver is dispositive within the meaning of Fed. R. Civ. P. 72(b)).  This Court addresses the motion as non-dispositive as it is referred on that basis. (ECF No. 29.)  However, in the alternative, this Opinion and Order may be construed as a Report and Recommendation to the district judge on the motion. *See Bache Halsey Stuart Shields Inc. v. Killop*, 589 F. Supp. 390, 394 (E.D. Mi. 1984) (holding that the magistrate judge properly issued a final ruling on the motion but in the alternative, the district court would construe it as a report and recommendation and adopt that recommendation in full).

**BACKGROUND**

The essential facts are not disputed on this motion.  The Property is utilized as a multifamily apartment building. (ECF No. 19 ¶ 9.)  Defendant Meyer Kaufman, a member of the Borrower, submitted a declaration stating that the Borrower purchased the Property on December 6, 2018, for a total sum of $2,135,000. (ECF No. 28 ¶¶ 1-2.)

As part of the purchase, on the same date, the Borrower entered into a $1,630,000.00 commercial mortgage loan (the "Loan"), signing a Loan Agreement – SBL ("Loan Agreement") in favor of Basis Multifamily Capital ("BMC"), and the New York Consolidated, Amended and Restated Note – SBL (the "Note"). (ECF No. 19 ¶ 7; ECF No. 6-5; ECF No. 6-6).  The Loan is secured by a Consolidation, Extension and Modification Agreement (the "Security Instrument"), dated December 6, 2018, which encumbers the Property. (ECF No. 19 ¶ 8; ECF No. 6-7, at 14.) In connection with the Loan, Moshe Stein, Eliyahou Fisher, and Meyer Kaufman (the "Guarantors") executed a Guaranty – SBL (the "Guaranty," with the Loan Agreement, the Note, and the Security Instrument, the "Loan Documents"). (ECF No. 19 ¶ 10; ECF No. 6-8.)  The Loan Agreement is governed by the law of jurisdiction in which the Property falls—*i.e.*, New York law. (ECF No. 6-5 § 10.02(a) & art. xi (defining "Property Jurisdiction").)

Under the Security Instrument, the BMC assigned all rights, interests, and title in and to the Loan and associated documents to Basis Multifamily Finance I, LLC ("BMF"). (ECF No. 19 ¶ 12; ECF No. 6-10.)  Thereafter, BMF assigned all rights, interests, and title in and to the Loan and associated documents to Federal Home Loan Mortgage Corporation ("FHLMC"). (ECF No. 19 ¶ 13; ECF No. 6-11.)  On or around April 10, 2019, FHLMC assigned all of its rights, interests, and title in and to the Loan and the associated documents to Wilmington. (ECF No. ¶ 14; ECF

No. 6-12.)  There were no further transfers or assignments before this litigation commenced. (*See* ECF No. 19 ¶ 15.)

Under the terms of the Note, the Borrower is required to make monthly payments of principal and interest. (ECF No. 19 ¶ 16; ECF No. 6-6 § 1.)  Section 8.01(a) of the Loan Agreement defines an Event of Default to include where the Borrower fails to pay or deposit any amount due and required by the Note, Loan Agreement, or other loan documents. (ECF No. 19 ¶ 17; ECF No. 6-5 § 8.01(a).)  Further, Borrower agreed to repair any damaged part of the Property to "good and workmanlike condition," among other representations regarding the condition of the property.  (ECF No. 19 ¶ 17; ECF No. 6-5 § 6.09(a)-(c).)  Under the Loan Agreement, an Event of Default also occurs when the Borrower "fail[s] to perform any of its obligations" under the Loan Documents. (ECF No. 6-5 § 8.01(t).)  If Borrower defaults, the Lender may accelerate the amounts due under the Loan Documents. (ECF No. 19 ¶ 19; ECF No. 6-7 § 31.)  Further, Borrower's license to collect rents under the loan documents may be revoked upon an Event of Default. (ECF No. 19 ¶ 19; ECF No. 6-7 § 3(b).)

If an Event of Default has occurred and is continuing, the loan documents also permit the Lender to take and maintain full control of the Property, to lease and operate the property, and to collect and receive all rents. (ECF No. ¶ 21; ECF No. 6-7 § 3(c).)

The Lender alleges two grounds for default on this motion.  First, it says that the Borrower is in default as a result of its failure to make monthly payments of principal and interest as well as other amounts due under the loan beginning in February 2025, at least to the date of the motion (the "Payment Defaults"); second, it says that the Borrower has failed to maintain the property in good repair and cure issues (the "Repair Defaults," with the "Payment

3

Defaults," the "Defaults") identified in a November 2024 inspection report (the "Inspection Report"). (ECF No. 19 ¶ 23; *see also* ECF No. 21, at 6.)

To this Court's understanding, the Inspection Report has not, at this point, been produced in this litigation. Defendants dispute the characterizations allegedly made in the Inspection Report, and assert they have engaged in "extensive repair work," including, *inter alia*, lead remediation, ironwork repairs, installation of a new boiler, roof remodeling and leak repairs, correction of sewer and plumbing issues, fire safety improvements, and ongoing closure of violations issued by New York's Housing Preservation Department ("HPD"). (ECF No. 28 ¶ 6.) According to Defendants, the cost of all repairs performed came to approximately $470,000. (ECF No. 28 ¶ 7.) Further, Defendants assert that three of its members have contributed "personal funds to pay shortfalls in making the monthly mortgage payments" and have not diverted funds. (ECF No. 28 ¶ 11.) Defendants do not attach any documentation with their motion to support these contentions.

The Lender has, however, attached to the Amended Complaint (ECF No. 6), evidence of liens against the Property as follows: (1) a potential Mechanic's Lien dated March 17, 2025, filed by County Oil Company Inc. (ECF No. 6-2); (2) one or more potential HPD lien(s) from 1992 (ECF No. 6-3); and (3) potential Environmental Control Board ("ECB") liens (ECF No. 6-4). HPD and ECB are named in the Amended Complaint as potential lienholders. Under the Loan Agreement, "[t]he grant, creation or existence of any Lien on the Mortgaged Property, whether voluntary, involuntary or by operation of law, and whether or not such Lien has priority over the Lien of the Security Instrument, or any other Lien to which Lender has consented" constitutes a "Prohibited Transfer" and an Event of Default under the Loan Agreement. (ECF

4

No. 6-5 § 7.02(a).)  The Security Instrument notes that "[a]n Event of Default under the Loan Agreement will constitute an Event of Default under this Instrument." (ECF No. 6-7 § 8.)

On August 22, 2025, the Lender addressed a letter ("Notice of Default") to the Borrower and various others, notifying them of the alleged Defaults. (ECF No. 19 ¶ 24; ECF No. 6-13.)  The Lender demanded that the Defaults be cured within ten business days (*i.e.*, by September 5, 2025). (*Id.* at 2.)  On September 9, 2025, the Lender sent another letter (the "Acceleration Letter") to the Borrower asserting the Defaults were continuing and the Lender was accelerating the amounts due. (ECF No. 19 ¶ 26; ECF No. 6-14.)  Alexander Houston, Analyst at KeyBank National Association ("KeyBank"), which is the "servicer and authorized agent" for Plaintiff (ECF No. 19 ¶ 1), stated that as of September 29, 2025, the unpaid amounts due total $1,459,730.56 in principal, along with interest, and that the Borrower has not paid the full amount due, despite continuing collection of rents. (ECF No. 19 ¶¶ 29-31.)

Section 3(c)(ii) of the Security Instrument provides the following:

> if an Event of Default has occurred and is continuing, regardless of the adequacy of Lender's security, without regard to Borrower's solvency and without the necessity of giving prior notice (oral or written) to Borrower, Lender may apply to any court having jurisdiction for the appointment of a receiver for the Mortgaged Property to take any or all of the actions set forth in the preceding sentence.  If Lender elects to seek the appointment of a receiver for the Mortgaged Property at any time after an Event of Default has occurred and is continuing, Borrower, by its execution of this Instrument, *expressly consents to the appointment of such receiver*, including the appointment of a receiver *ex parte* if permitted by applicable law.

(ECF No. 19 ¶ 32; ECF No. 6-7 § 3(c)(ii) (emphasis added).)

**LEGAL STANDARD**

Federal Rule of Civil Procedure 66 governs the appointment of a receiver in federal actions.  It provides that "the practice in administering an estate by a receiver . . . must accord with the historical practice in federal courts or with a local rule." Fed. R. Civ. P. 66.  Thus, federal law governs the appointment of a receiver in a diversity action, but our courts nevertheless sometimes look to state law for guidance. *See Citibank, N.A. v. Nyland (CF8) Ltd.*, 839 F.2d 93, 97-98 (2d Cir. 1988) (citing New York's Real Property Law ("RPL") § 254(10) and related New York case law); *see also U.S. Bank Nat'l Ass'n v. Nesbitt Bellevue Prop. LLC*, 866 F. Supp. 2d 247, 249 (S.D.N.Y. 2012) (citing *Varsames v. Palazzolo*, 96 F. Supp. 2d 361, 365 (S.D.N.Y. 2000)).  "The appointment of a receiver is considered to be an extraordinary remedy, and should be employed cautiously and granted only when clearly necessary to protect plaintiff's interests in the property." *Nesbitt Bellevue Prop.*, 866 F. Supp. 2d at 249 (citing *Rosen v. Siegel*, 106 F.3d 28, 34 (2d Cir. 1997)).

Mortgage holders may seek the appointment of a receiver "where the mortgage authorizes such appointment, and the mortgagee has repeatedly defaulted on conditions of the mortgage which constitute one or more events of default." *Citibank*, 839 F.2d at 97; *accord* N.Y. RPL § 254(10) ("A covenant 'that the holder of this mortgage, in any action to foreclose it, shall be entitled to the appointment of a receiver,' must be construed as meaning that the mortgagee, his heirs, successors or assigns, in any action to foreclose the mortgage, shall be entitled, without notice and without regard to the adequacy of any security of the debt, to the appointment of a receiver of the rents and profits of the premises covered by the mortgage; and the rents and profits in the event of any default or defaults in paying the principal, interest,

6

taxes, water rents, assessments, or premiums of insurance, are assigned to the holder of the mortgage as further security for the payment of the indebtedness."); *see also* N.Y. Real Prop. Actions & Procs. L. ("RPAPL") § 1325(1) (noting receivers may be appointed without notice and without notice of motion).  However, courts retain discretion to appoint a receiver even in the presence of a contractual provision authorizing a lender to apply for the appointment. *D.B. Zwirn Special Opps. Fund, L.P. v. Tama Broadcasting, Inc.*, 550 F. Supp. 2d 481, 491 (S.D.N.Y. 2008) (citing *Ariani v. 1075 Concourse Tenants Corp.*, No. 93-cv-377 (RCC), 1999 WL 637238, at *2 (S.D.N.Y. Aug. 20, 1999)).  Still, "the existence of a provision authorizing the application for a receiver in the event of a default[] 'strongly supports the appointment of a receiver' when there is a default." *Nesbitt Bellevue Prop.*, 866 F. Supp. 2d at 250 (citing *Citibank*, 839 F.2d at 97).

Courts consider various factors when considering whether to appoint a receiver:  (1) fraudulent conduct by the defendant; (2) the imminent danger that property will be "lost, concealed, injured, diminished in value, or squandered"; (3) the inadequacy of legal remedies; (4) the probability that plaintiff's harm in the absence of a receiver would be "greater than the injury to the parties opposing appointment"; and (5) plaintiff's "probable success in the action and the possibility of irreparable injury to his interests in the property." *Id.* at 249-50 (citing *Varsames*, 96 F. Supp. 2d at 365).

Where the party opposing the appointment clearly consented to the appointment in a contract, courts in this district have deemed that that party "bears the burden of demonstrating why a receiver should not be appointed." *D.B. Zwirn*, 550 F. Supp. 2d at 491 (S.D.N.Y. 2008) (citing *Melnick v. Press*, 2007 WL 2769490, at *2-3 (E.D.N.Y. Sept. 21, 2007)).

**DISCUSSION**

The Lender argues a Receiver should be appointed because courts routinely appoint receivers in similar circumstances and a receiver is necessary to protect its interest in the Property. The Borrower opposes, arguing a receiver is not necessary to protect the Lender's interest since the Property is in good repair and not in imminent danger of diminishing in value. The Borrower says the contract provision is not dispositive and the Lender has not established imminent risk of diminishment in value.

There is, initially, little doubt that the contract permits the Lender to seek a receiver. There is also no dispute about its terms, particularly the term under which the Borrower gave express consent. The Borrower does not seriously dispute on this motion, that no default has occurred or that the defaults (notably the Payment Defaults) are not continuing. Rather, the arguments of the parties focus on whether the interest of the Lender is at risk and needs protection through receivership.

It is likely that an Event of Default has occurred and is ongoing. The evidence of ongoing defaults is not rebutted on this motion. In particular, the records of potential liens attached to the Amended Complaint, some possibly stretching as far back as 1992, which were unresolved at the time of filing, strongly suggest ongoing defaults. Moreover, the potential Mechanic's Lien likely arose under Defendants' ownership. Defendants, who bear the burden of proof due to the strong presumption attaching from the consent provision of the Security Instrument and the foregoing case law, have not provided any evidence whatsoever that these potential liens have been resolved. Nor have they given any evidence that the default notices were erroneous or that they have cured any defaults.

It is of no moment then that Defendants allege they spent significant sums on repairs, given these repairs cannot be substantiated with reference to the documentary record submitted on this motion.  Likewise, their bald and conclusory assertions that they have been working to resolve the HPD issues are unavailing in the absence of a stronger showing of evidence.

Nor is it persuasive that the Inspection Report has not been provided.  The Court does not necessarily take the Lender at its word regarding the Inspection Report, but it does not need to rely upon that Report to conclude that the Lender is entitled to a receiver.  It appears sufficiently likely that the Borrower has failed to resolve certain issues with the Property, which specific failures constitute Events of Default specified in the Loan Agreement, and that such issues are continuing, and therefore, the appointment of a receiver is appropriate.  The evidence of a Mechanic's Lien being generated in March 2025, alone, is sufficient to find that an Event of Default likely occurred.  And no evidence has been provided on this motion that this lien has been resolved.  It is worth noting that the Borrower's Answer to the Amended Complaint denies "knowledge or information sufficient to form a belief as to the truth of the allegations" relating to the Mechanic's Lien. (ECF No. 8 ¶ 6; ECF No. 6 ¶ 13.)  Moreover, the Borrower has failed totally to submit evidence to rebut the assertion of the ongoing Payment Defaults, which are evidenced by the Notice of Default and Acceleration Letter.  Thus, it is likely that an Event of Default occurred and is continuing.

Moreover, there is sufficient likely risk of diminution to the value of the Property (which might render the legal remedy of foreclosure inadequate) and, thus, ongoing risk to the Lender's interest sufficient to warrant a receiver.  In addition to the assertions made in the

Houston Declaration regarding the Inspection Report, there are risks of the rents being diminished, transferred, or concealed from the Lender, given that Defendants offer no explanation for the default on payment obligations on the loan and provide no record evidence of units in good and workmanlike repair, despite the ostensible ease with which such evidence could be obtained.

Next, there is no clear reason why placing the Property in the hands of a receiver would create a hardship for the Borrower in the presence of an agreed-upon receivership provision. *See, e.g.*, *Greystone Bank v. Tavarez*, No. 09-cv-5192, 2010 WL 11651639, at *2 (E.D.N.Y. Apr. 26, 2010) (observing there is "little hardship in enforcing the terms of the parties' bargain" regarding a receiver pending foreclosure).  The Borrower has not submitted any evidence of hardship.

In opposition to the motion, the Borrower spends most of its brief arguing that the burden is on Plaintiff.  That is not how courts in this circuit have treated cases involving receivership consent provisions.  As stated above, in cases where a borrower consents to appointment of a receiver under the applicable likely facts, the law squarely places the burden on the defendant. *See D.B. Zwirn*, 550 F. Supp. 2d at 491 (S.D.N.Y. 2008) (citing *Melnick v. Press*, 2007 WL 2769490, at *2-3 (E.D.N.Y. Sept. 21, 2007)); *Wells Fargo Bank Nat'l Assoc. v. 366 Realty LLC*, 806 F. Supp. 3d 338, 351 (E.D.N.Y. Oct. 15, 2025); *U.S. Bank Nat'l Assoc. v. 1078 Whillmore LLC*, 740 F. Supp. 3d 157, 177 (E.D.N.Y. 2024).  Under these circumstances, the Borrower bears the burden to prove no receiver should be appointed, and the conclusory and unsupported assertions in the Kaufman declaration submitted by Defendants are wholly insufficient to defeat Plaintiff's motion.

The Borrower cites *College Diamond Fund Inc. v. Davis*, 2025 WL 1626442 (S.D.N.Y. Jan. 30, 2025), to support that the motion should be denied.  However, that case does not support its position.  In that case, Judge Tarnofsky recommended *sua sponte* dismissal of claims which would moot the receivership motion.[2] *Id.* at \*1.  In the alternative, she recommended denying the motion for a receiver on the merits. *Id.* at \*11-15.  However, that case was outside of the foreclosure context; rather, the plaintiff sought quiet title, and to partition and sell the property, eject occupants residing there, and appoint a receiver. *Id.* at \*1.  A foreclosure judgment had already been entered at the time the proceeding was commenced. *Id.* at \*4.  Moreover, there was no consent to a receiver in the event of a default at issue.  Thus, the plaintiff had not met its burden to show entitlement to appointment of a receiver in large part because the plaintiff itself or its predecessor in interest had been the owner of the subject property at the time it acquired "almost all" the liens. *Id.* at \*12.

Plaintiff's other cited case, *JDP Mortg. LLC v. Gosman*, is distinguishable on similar grounds. No. 19-cv-5968 (JS) (SIL), 2020 WL 8082390, at \*2 (E.D.N.Y. Dec. 21, 2020) (recommending denial of receiver in foreclosure action in the absence of a consent provision where plaintiff failed to meet its burden to show diminution of value), *report and recommendation adopted*, 2021 WL 66290 (E.D.N.Y. Jan 7, 2021); *see also Nesbitt Bellevue Prop.*, 866 F. Supp. 2d at 250 (noting the absence of an express consent provision, which is present in this case, distinguished *Nesbitt* from *D.B. Zwirn* for purposes of burden shifting). Here, the Borrower indisputably owned the Property at the time the potential Mechanic's Lien

---

[2]  Judge Tarnofsky's Report and Recommendation was never adopted or rejected because the Plaintiff moved to dismiss the complaint without prejudice under Federal Rule of Civil Procedure 41(a)(2). *College Diamond Fund Inc. v. Davis*, No. 24-cv-4800 (AT) (RFT), 2025 WL 1096983, at \*1 (S.D.N.Y. Mar. 13, 2025).

was issued.  There is no assertion that the Lender ever owned the Property or managed it.

Because of the consent provision, there is a strong presumption in favor of Plaintiff's

entitlement to a receiver upon a likely continuing Event of Default, and Plaintiff has shown its

entitlement thereto, which the Borrower has failed to rebut.

Likewise, the Borrower's argument that foreclosure or enforcement of the guaranties is

still available as an adequate legal remedy is unavailing because it continues to cite cases where

Plaintiff bore the burden of establishing its entitlement to a receiver.  For this reason, its

citation to *Wells Fargo Bank, Nat'l Ass'n v. 3708 Vestal Parkway E., LLC*, is unavailing.  No. 22-

cv-4714 (ER), 2023 WL 4741216, at *3 & n.8 (S.D.N.Y. July 25, 2023)( provision permitting the

lender to seek a receiver was not dispositive because there was no express consent to a

receiver given).

Defendants' argument that certain personal guaranties provide an adequate legal

remedy is unpersuasive.  The parties to the loan documents entered into the guaranties and

agreed to the appointment of a receiver if an Event of Default at the same time.  If they

believed the guaranties were sufficient protection in the event of a default, then there would

be no need to also have an agreement to appoint a receiver in the event of a default. *See In re

Texaco, Inc.*, 668 B.R. 1, 28-29, 40-41 (Bankr. S.D.N.Y. 2025) (noting that courts generally

construe contracts to give effect to the unambiguous intent of the parties and avoid rendering

contract provisions superfluous).  Indeed, if the Court were to accept this argument as

dispositive, this would rob the Plaintiff of a bargained-for right, resulting in greater hardship to

Plaintiff.  Thus, while under other circumstances the presence of guaranties may be persuasive,

it is not here.

Finally, Plaintiff proposes Friedman Real Estate Management ("Friedman") as receiver in this case. (ECF No. 19 ¶ 36; ECF No. 19-2.)  The Borrower does not oppose.  Plaintiff attaches Friedman's Receivership Proposal (the "Proposal") to the Houston Declaration.  The Court deems Friedman to possess the requisite experience to serve as receiver and finds the Proposal to be generally adequate.  However, the Court will first direct the parties to confer on the Proposed Order at ECF No. 20-1.  The parties shall file a joint letter indicating Borrower's comments (if any) on the Proposed Order, and Lender's response to those comments, **within seven days** of the date of this Opinion and Order.

## CONCLUSION

Accordingly, the motion to appoint a receiver is **granted**.  Within seven days of the date of this Opinion and Order, the parties shall file a letter regarding the Proposed Order at ECF No. 20-1 consistent with this Opinion and Order.

The Clerk is respectfully directed to terminate the motion at ECF No. 18.

**SO ORDERED.**

DATED:     New York, New York
           April 3, 2026

_____
KATHARINE H. PARKER
United States Magistrate Judge

13