**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| WILMINGTON TRUST, NATIONAL ASSOCIATION, AS TRUSTEE FOR THE REGISTERED HOLDERS OF CREDIT SUISSE FIRST BOSTON MORTGAGE SECURITIES CORP., MULTIFAMILY MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2019-SB61,<br><br>Plaintiff,<br><br>v.<br><br>1215 BROOK LLC; MOSHE STEIN; ELIYAHOU FISHER; MEYER KAUFMAN; COUNTY OIL COMPANY INC.; DEPARTMENT OF HOUSING PRESERVATION AND DEVELOPMENT; THE CITY OF NEW YORK ENVIRONMENTAL CONTROL BOARD; JOHN DOE NO. I THROUGH JOHN DOE NO. XXX, inclusive, the last thirty names being fictitious and unknown to Plaintiff, the persons or parties intended being the tenants, occupants, persons, or corporations, if any, having or claiming an interest in or lien upon the premises described in the Complaint,<br><br>Defendants. | USDC SDNY<br>DOCUMENT<br>ELECTRONICALLY FILED<br>DOC #:_____<br>DATE FILED: 5/26/2026<br><br><br>**ORDER**<br>**FOR APPOINTMENT OF RECEIVER**<br><br>1:25-cv-08270 (VM) (KHP) |

**ORDER FOR APPOINTMENT OF RECEIVER**

Plaintiff Wilmington Trust, National Association, as Trustee for the Registered Holders of Credit Suisse First Boston Mortgage Securities Corp., Multifamily Mortgage Pass-Through Certificates, Series 2019-SB61 ("**Lender**") filed a motion seeking the appointment of a receiver (the "**Motion**") to take possession of, secure, and administer certain real property and improvements thereon together with all rents, profits, and income derived therefrom, and certain personal property and fixtures related thereto (collectively, the "**Property**"), owned by 1215 Brook LLC ("**Borrower**") and located at 1215 Brook Avenue, Bronx, NY 10456.

The Court, for good cause shown, hereby finds that the appointment of a receiver for the Property is warranted and that Lender's proposed receiver, Friedman Real Estate Management, is qualified to act as receiver in this case, and the Court hereby grants the Motion. Friedman Real Estate Management is hereby appointed to act as receiver (the "**Receiver**") with respect to the Property, and the Court further orders as follows:

(a)    the Receiver is appointed to act and serve as receiver with respect to the Property and with respect to the income therefrom, whether now existing or hereafter collected, including the rents, profits, and income from the Property;

(b)    effective immediately, the Receiver is authorized to take and have complete and exclusive control, possession, and custody of the Property, together with any and all bank accounts, credit card receipts, demand deposits, reimbursement rights, bank deposits, security deposits, and all other forms of accounts, accounts receivable, payment rights, cash, and cash equivalents, all of which shall be delivered to the Receiver by Borrower and its agents, and the banks maintaining the Borrower's accounts;

(c)    effective immediately, the Receiver is authorized to take any and all actions the Receiver deems reasonable and appropriate to prevent waste to and to preserve, secure, manage, maintain, and safeguard the Property and all other forms of property to which the Receiver is entitled to take possession and control under this Order;

(d)    effective immediately, Borrower and all persons acting under the direction of any of them, including any current manager and listing agent of the Property, must deliver possession of the Property to the Receiver, without any right of offset or

2

recoupment, including: (1) all keys; (2) all leases and communication and correspondence files relating thereto; (3) all security deposits, rent, prepaid rent, other sums relating to the use, enjoyment, possession, improvement, or occupancy of all or any part of the Property, and any accountings of any of the foregoing; (4) a current list of the occupants of the Property, including all data with respect to each occupant; (5) any and all accounts receivable and accounts payable reports; (6) any and all documents pertaining to any ongoing litigation; (7) any and all documents pertinent to any licenses maintained in connection with the Property, and all communications and correspondence pertinent thereto; (8) any and all documents pertinent to any agreements entered into in connection with the Property, and all communications and correspondence pertinent thereto; (9) any and all contracts in effect with respect to any of the Property, and all communications and correspondence pertinent thereto; (10) any and all contracts, bids, or other materials relating to any contractor work at the Property; (11) any and all payroll records, employee files, applications, and other materials relevant to those persons employed by or at the Property; (12) passwords and controls for any and all websites and social media accounts affiliated with the Property; and (13) any other records pertaining to the management of the Property;

(e)     effective immediately, Borrower and all persons acting under the direction of Borrower, including any manager of the Property, irrespective of whether such manager is under the direction of Borrower, are enjoined from in any manner disturbing the Receiver's possession of the Property or any other property that is the subject of the Court's Order, and prohibit and restrain Borrower from disposing

of, dissipating, mishandling, or misappropriating any of the Property or other such property, and prohibit and restrain Borrower from collecting any rents or other sums due to Borrower, all until further order of the Court;

(f)     the Receiver is immediately vested with (and Borrower and its representatives and agents are ordered to immediately deliver) the books and records with respect to the operation of the Property, including any and all information related to: (1) rent rolls, occupancy lists, and leases affecting the Property; (2) amounts paid by lessees and other obligors of Borrower; (3) liens, encumbrances, and other interests against or affecting the Property; (4) property taxes owned by Borrower; (5) all types of insurance affecting the Property (which Borrower shall not terminate or modify without an order of this Court); (6) plans, specifications, surveys, and drawings of the Property; (7) access codes to the Property and any units therein; (8) all operating statements, financial statements, and accounting records of Borrower; (9) all warranties and maintenance manuals for any equipment located at the Property; and (10) all other aspects of the Property and the operation and management thereon;

(g)     the Receiver is ordered to allow Lender and its agents access to the Property at all reasonable times, subject to the rights of tenants in possession;

(h)     the Receiver is authorized to continue to manage, operate, and lease the Property;

(i)     the Receiver is authorized to market the Property for public or private sale, to prepare the Property for sale, and to clean and rehabilitate the Property in connection with any proposed sale;

(j)     the Receiver is authorized to retain, hire, or discharge employees at the Property and is authorized to retain a property manager and a listing agent for the Property,

pursuant to a commercially reasonable management and/or listing agreement with respect to the Property;

(k)     the Receiver is authorized to make payments and disbursements, in the ordinary course of business, as may be needed and proper for the preservation of the Property;

(l)     the Receiver is authorized to receive and collect any and all sums due and owing to Borrower, whether the same are now due or hereafter become due and owing, and to deposit such sums into an account in its own name (which sums shall not be commingled with any other funds) established and maintained by the Receiver;

(m)     the Receiver is authorized to maintain appropriate insurance, to continue any current insurance policies in place (which Borrower shall not act to discontinue or impair in any way), and authorized (but not obligated) to purchase further insurance as the Receiver deems appropriate If Receiver procures, renews or obtains insurance for the Property, the Receiver shall receive a fee for its services related to same equal to ten percent (10%) of the insurance premium;

(n)     the Receiver is authorized, but not required, to pay all current and past due real estate taxes, personal property taxes, and any other taxes and assessments against any of the Property;

(o)     the Receiver is authorized, but not required, to prepare and file tax returns with respect to the Property as may be required by law and to appeal any real estate tax assessment of the Property, provided, however, that the Receiver shall not be responsible for the preparation of any tax returns for Borrower;

(p)    the Receiver is authorized to: (1) negotiate and enter into new leases, occupancy agreements, and contracts in the ordinary course of the business of the Property; (2) modify existing leases, occupancy agreements, and contracts in the ordinary course of the business of the Property; (3) pay all utilities, expenses, and other obligations secured by, or which may give rise to, liens, and all other outstanding obligations to suppliers and servicers in the ordinary course of business, including obligations incurred prior to the commencement of the receivership so long as the Receiver has determined that it is prudent to do so in order to maintain business relationships that are beneficial to the conduct of the receivership; (4) make repairs necessary to the maintenance of the Property, including, but not limited to, all repairs to remediate any environmental conditions present at the Property, in order to preserve the Property in the ordinary course of business, provided, however, that the Receiver shall not make any improvements, repairs and/or remediations having a cost of $5,000.00 or more without first obtaining the approval of Lender or the Court (notwithstanding the foregoing, the Receiver may perform repairs and remediations in excess of $5,000.00 without Lender or Court approval if necessary to ensure the safety or security of tenants or if otherwise contemplated in the approved budget); (5) take all steps necessary to comply with all requirements, regulations and laws applicable to the Property, and to deal with all regulatory authorities in connection with the same and (6) take all steps necessary, including, without limitation, commencing construction and other repairs at the Property, necessary to bring the Property into compliance with all relevant ordinances and taking action to seek any necessary variance to the extent the Receiver deems necessary;

(q)     the Receiver is authorized to collect rents and other amounts now or hereafter becoming due to Borrower, to remove tenants or other persons or entities from the Property, or to defend against any action brought against the Receiver acting in such capacity, and to retain counsel for Receiver in connection with the foregoing and in connection with its obligations hereunder;

(r)     the Receiver is authorized to enter into further lending transactions by which Lender may lend monies to the Receiver (on a nonrecourse basis as to Receiver) to enable the Receiver to perform its duties hereunder, in which case any monies loaned shall be secured by a first and prior lien and security interest on the Property in favor of Lender, pursuant to Lender's existing mortgage and other Loan Documents (as defined in the Motion);

(s)     the Receiver is authorized to apply income from the Property, subject to the lien rights of Lender, as follows: (1) to the Receiver's approved fees and expenses; (2) to current operating expenses of the receivership incurred by the Receiver in the ordinary course of business; and (3) to the monthly obligations owed to Lender under the Loan Documents;

(t)     the Receiver is authorized to maintain sufficient cash on hand to enable the Receiver to meet expenses, in an amount to be agreed to between the Receiver and Lender;

(u)     The Receiver shall be entitled to compensation in accordance with the fee schedule attached hereto as **Exhibit A** (the "**Scheduled Fees**"), and shall be reimbursed for the cost of the below-referenced surety bond and for any out-of-pocket costs and expenses incurred outside the ordinary course and scope of operating and managing

7

the Property, including payment of payroll; if fees are in accordance with the Fee Schedule or as otherwise provided in this Order, then Receiver may, from time-to-time, deduct such payments from the funds held by Receiver; provided, however, such payments remain subject to the Court and any party-in-interest's review and objections;

(v)    the Receiver is authorized to retain CAM PROPERTY MANAGEMENT GROUP, LLC (or such other property manager approved by Plaintiff) as property manager and listing and leasing agent for the Property and to otherwise utilize the asset management services offered by Friedman Real Estate Management;

(w)    the Receiver is directed to file with the Court and serve on parties of record, within 45 days of entry of the order of the Court, and not less than quarterly thereafter, and within 30 days after termination of the receivership, full and complete reports, under oath, detailing receipts, disbursements, and transactions affecting the Property;

(x)    the Receiver is directed to post a surety bond in the amount of $10,000.00, the cost of which shall be an expense of the receivership;

(y)    no person or entity may file suit against the Receiver, in its capacity as Receiver, unless otherwise authorized in advance by this Court after notice and an opportunity for hearing provided to Plaintiff and to the Receiver;

(z)    the Receiver, and those agents and any property manager acting under its control, shall have no personal liability in connection with any obligations owed by the Borrower to its creditors, and no creditor of Borrower, other than Lender, shall seize or attempt to seize any property delivered to the Receiver hereunder, and no

8

creditor, including any utility company, shall act to terminate any existing service, either as a means of attempting to collect an obligation of Borrower or on account of an obligation of Borrower;

(aa)    the Receiver, and those agents and any property manager acting under its control, shall have no personal liability in connection with their conduct in the course of this receivership, except for claims due to their gross negligence, gross or willful misconduct, malicious acts, or failures to comply with the orders of this Court;

(bb)    the Receiver is authorized to undertake all actions specifically set forth in this Order, as well as to exercise the usual and customary powers accorded to a receiver under applicable law (except as otherwise limited by this Order or any subsequent order of the Court);

(cc)    nothing contained in this Order shall be construed as obligating the Receiver to advance its own funds in order to pay the costs and expenses of the receivership that have been approved by Lender and the Court;

(dd)    the Receiver may apply at any time to the Court, with notice to all other parties in this case, for further instruction and for further power necessary to enable the Receiver to properly fulfill his duties;

(ee)    the bond of the Receiver shall be canceled and the Receiver discharged, upon the Court's approval of the Receiver's final accounting;

(ff)    the entry of the Court's order appointing the Receiver shall not in any manner prejudice any of the other rights and remedies of Lender under its Loan Documents or under applicable law, including the right to foreclosure of the Property;

9

(gg)    the entry of this Order shall not in any manner preclude any consensual resolution that may be reached between Lender and Borrower, and the Receiver shall abide by the terms of any such consensual resolution;

(hh)    any action of the Receiver authorized in this Order shall require the consent of Lender if and when such action, if undertaken by Defendant, would require Lender's consent or authorization under any of the Loan Documents;

(ii)    Lender shall not become a mortgagee in possession as a result of this Order, and neither Lender nor the Receiver shall become responsible for any debts or obligations relating to the Property incurred prior to the date of this Order, including assessments, taxes, environmental obligations, or any other obligations;

(jj)    The Receiver is authorized to deliver this Order on any of the financial institutions that maintain any accounts relating to the Property or Borrower, and any such financial institution and any other persons in active concert or participation with Borrower is authorized to take such steps as are necessary to restrain or prevent Borrower from withdrawing, disbursing, distributing or causing the diversion of any funds, cash, income, deposits generated in any accounts relating to the Property or Borrower and are authorized to immediately turn over all funds in such accounts to the Receiver. Any financial institution maintaining accounts relating to the Property, is authorized to provide to the Receiver a complete listing of account numbers under the name of the Borrower, including accounts previously closed. Receiver shall have the power and authority to issue demands for the freezing and turnover of funds upon any financial institution or utility company which the Receiver has determined is a depository of funds belonging to, or arising from, the

10

receivership estate, whether such accounts be titled in the name of the Borrower or not;

(kk)   Borrower and its property managers, employees, and agents are prohibited from canceling, reducing, or modifying any insurance coverage in existence with respect to the Property (including any blanket policy). Within five (5) business days from entry of this Order, the Borrower or Borrower's insurance agent shall add the Receiver and other applicable parties to insurance coverage in accordance with the following (and to the extent the Receiver obtains insurance with respect to the receivership property, same shall apply): (i) name the Receiver as additional named insured and with respect to property insurance, as loss payee, (ii) name Plaintiff as "Lender's Loss Payable", (iii) name Property Manager as an additional insured, (iv) retain Borrower as the named insured, and (v) include other such additional insured, loss payee or similar statuses to such parties as reasonably requested by the Receiver. All payments, monies or funds paid pursuant to a claim on any insurance policy shall be deemed property of the Receiver and shall be paid or turned over to the Receiver. The Receiver has the power to procure or maintain appropriate insurance coverage for the property in such amounts, with such companies, to insure against such risks, as the Receiver deems necessary or desirable and the Receiver may finance any of the premiums associated with such insurance without Court approval. If the Receiver deems it necessary to replace insurance coverage, or does so at the request of the Plaintiff, the Receiver will endeavor to replace the insurance with coverage consistent with the Loan Documents. In the event any insurance coverage in existence with respect to the Property is canceled by

11

Borrower, Borrower's property managers, employees, or agents, the insurance company, or the Receiver, then any refunds or reimbursement of premiums and/or monies paid as a result of the insurance cancellation shall be deemed property of the Receiver and shall be paid or turned over to the Receiver. No insurance provider is permitted to terminate its insurance policy as a result of the Property being placed in a receivership;

(ll)    The Receiver has the power to procure or maintain appropriate utility services for the property. The Receiver is authorized to open new customer accounts with each utility that provides services to the Property. The Receiver may establish and maintain such utility accounts with the federal employer identification number of Borrower (or with its own or a new entity's EIN). No service providers shall be allowed to transfer to this receivership any outstanding amounts due from other receiverships or property managed by or associated with the Receiver. The Receiver shall not be responsible for payment of any utility bills (including without limitation, electricity, gas, water, sewage, garbage, television/cable and telephone), unpaid payroll expenses, unpaid service vendor invoices, unpaid supply vendor invoices or other unpaid invoices incurred by, or the benefit of, the Property prior to the Receiver's taking possession of the Property. Utility companies and other providers of utility services, including without limitation, electricity, gas, water, sewage, garbage, television/cable and telephone are directed not to demand additional deposits or to discontinue service or require defendant to name the Receiver as an authorized user of any of the existing utility accounts for the Property;

(mm) The Receiver may open and review mail, including e-mail, and faxes received at the Property or elsewhere directed to Borrower or its manager relating to the Property and may issue a demand that the U.S. Postal Service grant exclusive possession and control of mail, including postal boxes as may have been used by Borrower, and may direct that mail relating to the Property be re-directed to the Receiver;

(nn) Borrower or its property manager shall terminate any and all employees and or other personnel (collectively, "Personnel") of the Property and such termination shall be in compliance with any applicable federal, state or local statutes and regulations including those governing mass layoffs. The Receiver (or its property manager) is authorized to hire Personnel at the Property and pay such Personnel in accordance with all applicable laws. To the extent the Receiver (or its property manager) decides to hire any of the dismissed Personnel, none of Receiver, its property manager, nor the receivership estate shall be liable for any claims of such Personnel that arose prior to the date and time of the entry of this Order. Borrower or any management companies engaged by Borrower (as appropriate) will be solely and exclusively responsible for (i) any claims or liabilities that arose prior to the appointment of the Receiver that are in any way related to an employee's employment with or separation from Borrower or any management companies engaged by Borrower, including any compensation, benefits, accrued vacation, payroll taxes, workers compensation insurance, severance liabilities, contractual obligations, or benefit plans, and (ii) liabilities existing prior to the Receiver's appointment related to the Worker Adjustment and Retraining Notification Act

(WARN), 29 U.S.C. § 2101, *et seq.*, and liabilities existing prior to the Receiver's appointment related to the Consolidated Omnibus Budget Reconciliation Act (COBRA), or similar state statutes or regulations;

(oo)    Borrower will maintain its entity in good standing; and

(pp)    Any security or other deposits which tenants have paid to Borrower or its agents and which are not paid to the Receiver (or its property manager), and over which the Receiver (or its property manager) has no control, shall be obligations of Borrower and may not be refunded by the Receiver (or its property manager) without Plaintiff's approval or an order of this Court. Any other security or other deposits that tenants have paid or may pay to the Receiver (or its property manager), if otherwise refundable under the terms of their leases or agreements with the Receiver, shall be refundable by the Receiver (or its property manager) in accordance with the leases or agreements.

SIGNED this 26 day of May, 2026

Katharine H Parker

The Honorable Katharine H. Parker
United States Magistrate Judge
Southern District of New York

14

## EXHIBIT A
## (Scheduled Fees)

**Receivership Fee**

Friedman will receive a fee of Three Hundred and Fifty Dollars ($350.00) per hour with a minimum monthly fee of Two Thousand Five Hundred Dollars ($2,500.00) per month for receivership functions associated with the property.

**Management Fee**

Friedman will engage a third-party local management company to manage, lease, maintain, and provide the accounting and reporting for this property at prevailing market rates for properties of this type in the market.

**Accounting Fee**

Friedman shall receive a monthly fee of Five Hundred Dollars ($500.00) for overseeing the day-to-day accounting functions.

**Expense Reimbursement**

Friedman shall be reimbursed for all out-of-pocket expenses for the benefit of the property.

**Disposition Fee**

If Friedman is not selected as the investment sales broker, a disposition fee of 0.25% will be charged.